James LEGGINS, Petitioner,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Respondent.

No. PB–C–85–231.

United States District Court, E.D. Arkansas, Pine Bluff Division.

Sept. 5, 1986.

Sandra Johnson-Buchanan, Asst. Atty. Gen., Little Rock, Ark., for respondent.

James Leggins, pro se.

## AMENDED MEMORANDUM AND ORDER

ROY, District Judge.

### I.

Petitioner, James Leggins, was convicted on June 12, 1979, in the Pulaski County Circuit Court of two counts of aggravated robbery and was sentenced as a habitual offender to thirty (30) years imprisonment. On appeal, the Arkansas Supreme Court reversed, finding that the State's evidence presented during the sentencing phase of Petitioner's bifurcated trial was insufficient to support the jury's finding that Petitioner was a habitual offender. *Leggins v. State,* 267 Ark. 293, 590 S.W.2d 22 (1979)

(*Leggins I*). Consequently, the Arkansas Supreme Court ordered that the Petitioner's sentence be reduced to 10 years within 17 calendar days unless the State desired to try Petitioner again.

The evidence which the Arkansas Court found to be insufficient in *Leggins I* was a Crittenden County Circuit Court conviction which read "James Ligion". This was offered to prove that Petitioner had two previous convictions,[1] prior to his 1979 aggravated robbery convictions. Under Arkansas law, the offense of aggravated robbery is a Class A felony which carries a penalty of not less than five (5) years nor more than 50 years, or life. *Ark.Stat.Ann.* §§ 41–901, 2102.

The Arkansas Court in *Leggins I* recognized the doctrine of *idem sonans*, the rule that absolute accuracy in spelling names is not required if the names, though spelled differently, sound practically identical; but held that "Ligion" cannot be stretched to be Leggins. Thus, the State, having only offered evidence of two previous convictions, one of them being the "Ligion" conviction, failed to prove two valid convictions as required for penalty enhancement under Arkansas law. In *dicta*, the Court stated that if the State had submitted the Petitioner's indigency affidavit where he signed his name as "Liggion", there would have been sufficient evidence for the jury to find that Leggins was the same person as the "Ligion" who had previously been convicted in Crittenden County, Arkansas.

The State retried Petitioner on March 14, 1980. He was again convicted of two counts of aggravated robbery. This time the State offered the Petitioner's affidavit of indigency (which Petitioner had signed "Liggion") into evidence as proof that the Petitioner, James Leggins, was the James Ligion previously convicted of a felony in Crittenden County, Arkansas. The jury found Petitioner to be a habitual offender on the basis of this evidence and sentenced him to two (2) terms of life imprisonment. This conviction was affirmed by the Arkansas Supreme Court. *Leggins v. State*, 271 Ark. 616, 609 S.W.2d 76 (1980) (*Leggins II*).

On May 16, 1985, Petitioner filed a *pro se* application in this Court seeking a federal writ of habeas corpus, pursuant to 28 U.S.C. § 2254, alleging that the conviction and sentence resulting from his second trial (*Leggins II*) violated his 5th Amendment rights against double jeopardy. Petitioner also alleges that his attorney's failure to object to the State's use of the Crittenden County conviction of James Ligion and his indigency affidavit to enhance sentencing violated his 6th Amendment rights to effective counsel.

## II.

The Respondent, represented by the Arkansas Attorney General, has filed a response and motion to dismiss. Respondent does not deny that Petitioner's double jeopardy rights were violated. Respondent argues that this Court should not consider Petitioner's claim on its merits on the theory that Petitioner has deliberately bypassed State procedures for post-conviction relief, citing *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), which reiterates the procedural default rule announced in *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Under *Sykes*, and *Engle*, a prisoner may not bring a habeas claim to federal court where he did not take advantage of State procedural and post-conviction remedies unless there was "cause" for his failure to do so and the Petitioner was "prejudiced" thereby.[2]

The Respondent points out that the Petitioner did not raise double jeopardy or inef-

---

1. *Ark.Stat.Ann.* § 41–1001 (Repl.1977) provided that a person who had previously been convicted of more than one (1) felony could be sentenced to an extended term of imprisonment, as a habitual offender, upon his conviction of a third felony.

2. The cause and prejudice standard set forth in *Sykes,* supra, and *Engle,* supra, is more demanding than the "deliberate bypass" described in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See *Engle,* 456 U.S. at p. 130, N. 36, 102 S.Ct. at p. 1573, N. 36.

fective counsel as an issue in *Leggins II* nor seek post-conviction relief in State court, and that the three (3) year time limit for seeking post-conviction relief in State court has passed.[3] Respondent argues that the Petitioner cannot establish "cause" for his failure to assert his constitutional claims under these State procedures and that, as a result, Petitioner's habeas claim should be dismissed.

"Where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984). Therefore, if the Petitioner's double jeopardy theory is so novel that there was no reasonable basis to assert it, the procedural bar under *Sykes* and *Engle* does not apply.

It is clear that a prisoner, or his attorney, is not required to have a crystal ball enabling him to foresee an unprecedented constitutional claim in order to escape the procedural default doctrine. On the contrary, the Supreme Court in *Engle* stated the following:

> We might hesitate to adopt a rule that would require trial counsel to exercise extraordinary vision or to object to every aspect of the proceedings in hope that some aspect might mask a latent constitutional claim. *Engle*, 456 U.S. p. 131, 102 S.Ct. at p. 1573.

The Court in *Engle* stated further "we are confident that the victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard ...". *Id.*, p. 135, 102 S.Ct. at p. 1575.

In *Ross*, supra, the Supreme Court noted three (3) situations in which a claim would be so novel that counsel would not have a reasonable basis for asserting a claim:

1. A decision of the Court overruling established precedent;

2. A decision overturning a longstanding and widespread practice not previ-

ously addressed by the Court, but approved by lower courts; and

3. A decision which disapproves of a practice arguably sanctioned by the Court in previous cases.

*Ross*, 104 S.Ct. 2901.

■ After reviewing the law and the facts in the present case, the Court finds that the Petitioner's claim is sufficiently novel to meet the *Ross* criteria. The most recent case that expresses the Supreme Court's traditional application of the double jeopardy clause of the 5th Amendment is *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Pearce*, the Supreme Court held that double jeopardy did not preclude the retrial of a criminal defendant when his conviction was reversed on appeal. In 1978, the Supreme Court noted that its previous decisions concerning the double jeopardy clause had been inconsistent and held that "the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient ...". *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The Court's holding in *Burks* distinguished between reversal of conviction based upon trial error and reversal of conviction based upon insufficiency of the evidence.

> "By deciding that the Government had failed to come forward with sufficient proof of petitioner's capacity to be responsible for criminal acts, that Court was clearly saying that Burk's criminal culpability had not been established. If the District Court had so held in the first instance, as the reviewing Court said it should have done, a judgment of acquittal would have been entered and, of course, petitioner could not be retried for the same offense." *Id.*, p. 10, 98 S.Ct. at p. 2147.

The double jeopardy clause was not held to be applicable to sentencing procedures until 1981 in *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), by a 5 to 4 vote.

---

3. Arkansas Rules of Criminal Procedure, Rule 37 (Repl.1977).

The Petitioner was tried in the present case for the second time on March 14, 1980. The Arkansas Supreme Court decision in *Leggins II* affirming Petitioner's second conviction was rendered on December 22, 1980. The Respondent contends that the Petitioner had a reasonable basis to make his claim that the double jeopardy clause prevented his retrial in 1980, even though the Supreme Court did not so hold until 1981, and then with half of the Justices in disagreement. This Court cannot agree. Such a burden on Petitioner is too great.

The Court notes that the Supreme Court had rejected previous attempts to apply double jeopardy to sentencing procedures. *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973); and *United States v. DeFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

In its *Bullington* decision, the Supreme Court, at the very least, disapproved of a practice arguably sanctioned by the Court in previous cases. Therefore, the *Ross* test for "cause" is met. The imposition of two (2) life sentences to imprisonment upon Petitioner as a result of *Leggins II*, where the Petitioner's 30–year sentence had been ordered reduced to 10 years in *Leggins I*, is obvious "prejudice". Having met the cause-and-prejudice test in *Sykes*, as expanded in *Engle* and explained in *Ross*, the Petitioner's claim can be heard on its merits. There has been no procedural default.

### III.

■ The Petitioner's claim is that his second conviction as a habitual offender in *Leggins II* violated his 5th Amendment protection against double jeopardy because the Arkansas Supreme Court reversed his first conviction in *Leggins I* on the basis of insufficient evidence. The Court finds that the sentencing phase of the Petitioner's second trial, in which the State sought to prove that Petitioner was a habitual offender, violated Petitioner's 5th Amendment right against double jeopardy. Therefore, a writ of habeas corpus will issue.

The issue in this case is whether double jeopardy applies to the sentencing phase of a second trial, where the Petitioner's previous conviction as a habitual offender in his first trial was reversed on the basis of insufficient evidence. Relying on the rule announced by the United States Supreme Court in *Bullington*, supra, and the recent decision in *Nelson v. Lockhart*, 641 F.Supp. 174 (E.D.Ark.1986) (Eisele, J.), this Court finds that it does.

In *Bullington*, the Supreme Court held that the Missouri statute, which required a bifurcated trial to determine guilt and punishment separately in cases where the death penalty could be imposed, triggered the double jeopardy clause of the 5th Amendment if the State attempted to seek the death penalty again in a second trial after the first capital sentence had been reversed on the basis of insufficient evidence. The Court reasoned that because the statute imposed a burden of proof upon the state to prove aggravating circumstances before the jury could impose capital punishment, the sentencing phase of a capital trial under the Missouri statute, was "itself a trial on the issue of punishment" in which the defendant could be found guilty of aggravating circumstances or acquitted of them. *Id.*, 101 S.Ct. at p. 1858. Therefore, double jeopardy protection was held to attach.

In *Nelson*, the Court held that "the characteristics of the Missouri statute which triggered the application of double jeopardy in *Bullington* are present in the Arkansas Habitual Offender statute. *Ark.Stat. Ann.* §§ 41–1001 et seq." because this statute provides that a person may be sentenced to an extended term of imprisonment if it is proven that the person is a habitual offender. A person is a habitual offender under Arkansas law if it is proven beyond a reasonable doubt that the person has previously been convicted of two felonies. *Ark.Stat.Ann.* §§ 41–1001, 1003 (Repl.1977). The Court then stated the following:

The important consideration, in any event, is whether the enhancement proce-

dure available under §§ 41–1001, et seq. possesses all the "hallmarks of a trial on guilt or innocence." The Court concludes that it does and therefore that the rationale of *Bullington* requires the application of the Double Jeopardy Clause to those proceedings pursuant to the Arkansas Habitual Offender Act. (citations omitted)

The facts in *Nelson* are almost identical to those in the present case. In *Nelson,* the State introduced four documents of conviction to prove that the defendant should be sentenced under a section of the Arkansas Habitual Offender Act which provides severe penalty enhancement for persons who have previously been convicted of four (4) felonies, prior to the one for which he is being tried. The Arkansas Supreme Court reversed Nelson's conviction as a habitual offender because one of the four convictions offered into evidence had been pardoned and was, thus, not a valid conviction for purposes of sentence enhancement under that Court's previous ruling in *Duncan v. State,* 254 Ark. 449, 494 S.W.2d 127 (1973). The State had only proven three prior convictions against Nelson, rather than the four attempted. The conviction was reversed on the basis of insufficient evidence. Therefore, double jeopardy precluded the State from attempting to retry Nelson as a habitual offender.

In the present case, the Petitioner's first conviction was reversed on the basis of insufficient evidence to sentence him as a habitual offender. The Arkansas Supreme Court held that a document of conviction identifying James "Ligion" was insufficient evidence to prove that Petitioner, James Leggins, was a habitual offender in the absence of other evidence.

The holdings in *Bullington,* supra, and *Nelson,* supra, control. It was a violation of the double jeopardy clause of the 5th Amendment for the State to try Petitioner as a habitual offender for the second time in *Leggins II.* One bite of the apple is all they get. The State may sentence Petitioner for the underlying crime, as provided for under the applicable Arkansas law. He may not be resentenced as a habitual offender.

## IV

After reviewing the initial recommendation of the Magistrate [4] that a writ of habeas corpus should issue on the bases of precedent set forth in *Nelson* and *Bullington* the State objected to the recommendation on the grounds that the United States Supreme Court's decision in *Bullington* should not be applied retroactively. Accordingly, this Court referred that matter back to the Magistrate for further findings on the issue of retroactive application of *Bullington.* The Magistrate has returned his findings and this Court now holds that *Bullington* should be applied retroactively to the present case.

As previously stated, this Court's conclusion that the double-jeopardy clause of the United States Constitution bars a second application of the Arkansas' habitual offender statute, where a criminal defendant's enhanced penalty has been reversed for insufficient evidence, follows the previous decision in *Nelson v. Lockhart,* 641 F.Supp. 174 (E.D.Ark.1986) (Eisele, J.).

The *Nelson* opinion noted that the issue of whether the double jeopardy clause should be applied to sentence enhancement statutes in cases other than death cases is one of first impression in the Eighth Circuit. For this reason, the Court in *Nelson* conducted a review of the cases from the Fifth and Tenth Circuit Courts of Appeals, which have addressed this issue. The *Nelson* Court noted that the Fifth Circuit followed the reasoning of *Burks,* supra, and *Bullington,* to the conclusion that the government's failure to satisfy the requirements of the Texas sentencing enhancement statute constitutes an acquittal and therefore a second enhanced sentencing procedure would violate the double jeopardy clause, citing *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.1982); *French v. Estelle,* 692 F.2d 1021 (5th Cir.1982); and *Briggs v.*

4. The Honorable John F. Forster, Jr., U.S. Magistrate, Eastern District of Arkansas.

*Procunier,* 764 F.2d 368 (5th Cir.1985). The Tenth Circuit held the opposite by concluding that the state's failure to show an element necessary for enhancement was only a "trial error" and not an acquittal that would trigger the double jeopardy rule. See *Linam· v. Griffin,* 685 F.2d 369 (10th Cir.1982). The *Nelson* Court adopted the Fifth Circuit's view, stating that "the Fifth Circuit's line of cases is better reasoned" and that it would "follow its (the Fifth Circuit's) rationale."

The Fifth Circuit's leading case on the double jeopardy rule in penalty enhancement cases is *Bullard v. Estelle,* 665 F.2d 1347 (5th Cir.1982). In *Bullard,* the Petitioner was found guilty of theft and given an enhanced penalty as a habitual offender in a bifurcated trial, because he allegedly had two previous felony convictions. The Petitioner's enhanced penalty was vacated due to insufficient evidence, but the conviction itself was upheld. *Bullard v. State,* 548 S.W.2d 13 (Tex.Cr.App.1977). The Petitioner exhausted his state remedies and sought habeas relief in Federal District Court under 28 U.S.C. § 2254, alleging that the presentation of new evidence at his second sentencing hearing to enhance his penalty under the Texas habitual offender statute violated the double jeopardy clause. The District Court issued a writ of habeas corpus and held that subjecting Petitioner to a second enhancement penalty proceeding violated the double jeopardy clause because he was "acquitted" of being a habitual offender when his first sentence was reversed. *Bullard v. Estelle,* 502 F.Supp. 887 (N.D.Tex.1980).

The District Court's decision to issue the writ in *Bullard,* was based upon the decisions issued in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Green v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), which clarified the rule that convictions reversed due to insufficient evidence will trigger the double jeopardy clause while convictions reversed due to trial error do not. Because Bullard's conviction and sentencing became final before the *Burks* and *Green* decisions were issued in 1978, the District Court in

*Bullard* considered the retroactivity of *Burks* and *Green* as a threshold issue to granting relief for the double jeopardy violation. Following the lead of the Ninth Circuit in *United States v. Bodey,* 607 F.2d 265 (9th Cir.1979), the Court held that *Burks* and *Green* applied retroactively to provide relief for the Petitioner. *Bullard,* 502 F.Supp. at p. 891.

While the State's appeal in *Bullard* was pending before the Fifth Circuit, the United States Supreme Court issued its opinions in *United States v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), and *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981). The Appeals Court found that *Burks* and *Bullington* together constitute an absolute prohibition against conducting a subsequent penalty enhancement proceeding where the first enhanced penalty was reversed for insufficient evidence, as a double jeopardy violation. *Bullard v. Estelle,* 665 F.2d 1347, 1362 (5th Cir.1982).

After determining that reversal of an enhanced penalty for insufficient evidence precluded a second enhancement proceeding under the double jeopardy clause, the *Bullard* court then turned to the issue of whether *Burks* and *Bullington* should be retroactively applied. After reviewing the line of cases dealing with the retroactivity of decisions expanding constitutional protections in the criminal context, beginning with *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), the Court held that *Burks* and *Bullington* should be retroactively applied. *Bullard,* 665 F.2d at p. 1366.

In holding that *Burks* and *Bullington* should have retroactive application, the Fifth Circuit gave great weight to the fact that the constitutional protection at issue was the double jeopardy clause, rather than a procedural safeguard under the Fourth Amendment as in *Linkletter,* supra. Cf. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Desist v. United States,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Robinson v.*

*Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Keeble v. United States,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973); *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975); and *United States v. Johnson,* 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982).

■ Generally, the factors to consider when determining whether a constitutional rule should be applied retroactively are set forth in *Stovall,* supra. *Bullard,* 665 F.2d at p. 1363. These factors are (1) the purpose to be served by the new rule, (2) the extent to which law enforcement authorities relied on the old rule, and (3) the effect on the administration of justice of a retroactive application of the new rule. See also, *Desist v. United States,* supra. However, in *Robinson v. Neil,* supra, the Supreme Court specifically addressed the issue of retroactivity in double jeopardy cases, and stated the following:

> [t]he guarantee against double jeopardy is significantly different from procedural guarantees held in the *Linkletter* line of cases to have prospective effect only. While this guarantee, like others, is a constitutional right of the criminal defendant, its practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial.

In response to the language of the Supreme Court in *Robinson,* the *Bullard* court stated as follows:

> Where no trial should have been held, there cannot be a question, as in procedural rulings, whether the defendant, in spite of the unconstitutional ruling, was treated fairly at trial. As *Burks* and *Bullington* indicate, the double jeopardy clause forbids a second enhancement hearing; thus only if Bullard's second enhancement hearing is nullified by retroactive application of *Burks* and *Bullington* will he receive the protection the double jeopardy clause intended. *Bullard,* 665 F.2d at 1365.

Because of the statement in *Robinson* that the element of reliance embodied in the *Linkletter* analysis would not be totally absent in double jeopardy cases, the *Bullard* Court held further that the state had no justifiable reliance on the prior rule and was not prejudiced by retroactive application of the new rule. *Id.,* 665 F.2d p. 1365.

While the decision in *Bullard* was vacated on other grounds, *Estelle v. Bullard,* 459 U.S. 1139, 103 S.Ct. 776, 74 L.Ed.2d 987 (1983), it was reaffirmed as valid circuit precedent in *Bullard v. Estelle,* 708 F.2d 1020, 1023, N. 4 (5th Cir.1983); and *French v. Estelle,* 692 F.2d 1021 (5th Cir.1982), modified on other grounds, 696 F.2d 318 (5th Cir.) cert. denied. 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983). See also *Carter v. Estelle,* 677 F.2d 427, 452 N. 24 (5th Cir.), modified, 691 F.2d 777 (5th Cir. 1982), cert. denied 460 U.S. 1508, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983).

■ Turning now to the present case, this Court finds that *Bullington* should be applied retroactively to Petitioner Leggins. The Supreme Court's holding in *Robinson v. Neil* is controlling and distinguishes double jeopardy cases from cases involving procedural protections such as *Linkletter,* supra, or *United States v. Johnson,* supra, cf. Vol. 1B *Moore's Federal Practice,* p. 82. Moving a step further, to apply the *Stovall* and *Linkletter* factors, two of the three factors to consider (purpose of the rule and prejudice to the state) are clearly in favor of retroactivity. The State is not prejudiced because it has had its opportunity to convict and failed. Without retroactivity the purpose of a rule designed to prevent a second trial is meaningless. The issue of reliance is at least partially in the State's favor. However, reliance is a minor factor in double jeopardy cases under *Robinson.* See *Bullard,* 665 F.2d at p. 1364, N. 33. The Court takes further note of *Occhino v. United States,* 686 F.2d 1302 (8th Cir.1982) and *Wycoff v. Menke,* 773 F.2d 983 (8th Cir.1985), which deals with retroactivity of new rulings concerning the statute of limitations in suits brought under 42 U.S.C. § 1983. These cases also apply a balancing test to determine retroactive application (but use different factors because they are civil rather than criminal in nature) and hold that a rule should have retroactive

application when the majority of the factors to consider favor retroactivity.

The Court finds the discussion of retroactivity set forth in *Bullard* to be persuasive and implicitly adopted in *Nelson.* Reading *Nelson, Bullard, Stovall,* and *Robinson* together, this Court holds that *Bullington* is to be retroactively applied, and holds further that the criteria set forth in *United States v. Johnson* is limited to Fourth Amendment procedural cases.

## CONCLUSION

The Petitioner's request for a writ of habeas corpus is granted. The State is hereby ordered to resentence Petitioner to a term of 10 years to run beginning at the time of the Arkansas Supreme Court's order of reversal in *Leggins I* on December 3, 1979. The Petitioner's present sentence to two life terms is hereby vacated.

IT IS, THEREFORE ORDERED that the Petitioner be resentenced to a term of 10 years, as outlined above and previously ordered by the Arkansas Supreme Court, within sixty (60) days, or be retried by the State and sentenced for the two robberies.

IT IS FURTHER ORDERED that if the State fails to so resentence or retry the Petitioner within said period of time, Petitioner shall be released and freed from custody.

IT IS SO ORDERED.